# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MED FLIGHT AIR AMBULANCE, INC.,

        Plaintiff,                      No. 1:17-cv-00246-WJ-KRS

v.

MGM RESORTS INTERNATIONAL,
and UMR, INC.,

        Defendants.

## AMENDED[1] OPINION AND ORDER GRANTING IN PART MOTION FOR JURISDICTIONAL DISCOVERY, ESTABLISHING SCOPE OF DISCOVERY, SETTING JURISDICTIONAL DISCOVERY DEADLINES, AND DENYING PREVIOUS MOTION AS MOOT

This matter is before the Court on Defendant Med Flight Air Ambulance, Inc.'s ("Med Flight") motion for limited discovery on the issue of personal jurisdiction. [Doc. 24]. Med Flight asserts it needs additional information to combat what it feels is a "one-sided" affidavit Defendant MGM Resorts International ("MGM") offered in moving to dismiss under Federal Rule of Civil Procedure 12(b)(2) [Doc. 21].[2] MGM has filed a response in opposition to Med Flight's discovery request [Doc. 26], and Med Flight submitted a reply. [Doc. 28]. The Court has considered the parties' submissions and finds that limited discovery is warranted under the circumstances.

---

[1] The Court submits this amended opinion and order to clarify that portion of the order denying as moot Med Flight's request, contained within the instant motion for jurisdictional discovery, for an extension to respond to MGM's motion to dismiss for lack of jurisdiction. That request is moot because United States District Judge William P. Johnson granted a separate, standalone motion for the same relief. [*See* Doc. 31].

[2] This motion is styled on the docket as one to "dismiss for lack of prosecution." The title is incorrect: the motion seeks dispositive relief for lack of *personal jurisdiction*.

# I.   PROCEDURAL BACKGROUND

Med Flight commenced this lawsuit on January 12, 2017 in New Mexico's Second Judicial District Court, alleging MGM, then Defendant Sierra Health Care Options ("Sierra"), and Defendant UMR, Inc. ("UMR") failed to pay it $189,500.00 for medically evacuating MGM employee Adrian Hernandez from El Paso, Texas to Las Vegas, Nevada. [Doc. 1-1, Compl., ¶¶ 1-12]. As part of his treatment, Mr. Hernandez assigned Med Flight his benefits under MGM's employee health plan. [Doc. 1-1, ¶9]. According to the complaint, Sierra is an administrator and/or insurer under the plan and UMR another administrator. [Doc. 1-1, ¶¶3-4]. Sierra removed the matter to the United States District Court for the District of New Mexico on February 17, 2017 asserting the case was preempted in its entirety under the Supremacy Clause of the United States Constitution and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). [Doc. 1].

Med Flight amended its complaint on March 10, 2017. [Doc. 14, Am. Compl.]. Among other things, Med Flight dismissed Sierra and narrowed its claims to allege causes of action arising solely under ERISA. [*See* Doc. 14, ¶¶32-48 (averring that by not paying for the medivac, MGM and UMR breached the benefits plan pursuant to 29 U.S.C. § 1132(a)(1)(B) (Count I); Med Flight  had to engage lawyers in this matter and is threfore entitled to attorneys under 29 U.S.C. § 1132(g)(1) (Count II); and MGM and UMR violated 29 U.S.C. §1132(c)(1) when they failed on three separate occasions to provide plan documents (Count III))]. MGM moved to dismiss the amended complaint for lack of jurisdiction on March 24, 2017 [Doc. 21].  Med Flight

filed the instant motion on April 7, 2017 asking the Court to grant limited discovery to demonstrate MGM may properly be hailed into court in the District of New Mexico [Doc. 24].[3]

## II. STANDARD

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling—Temco—Vought, Inc.,* 511 F.2d 1033, 1035 (10th Cir. 1975). The decision to grant jurisdictional discovery, however, is discretionary. *See id.* Although there is a dearth of reported decisions in the Tenth Circuit on the exercise of that discretion, some guidance exists. *See Grynberg v. Ivanhoe Energy, Inc.,* 490 Fed. Appx. 86, 103 (10th Cir. 2012). First, denying jurisdictional discovery is only error *if* "the denial results in prejudice to a litigant." *Id.* (citing *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002)). In this circumstance, "[p]rejudice is present where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* Second, the Court may properly deny discovery where there is a "very low probability" that discovery will affect the outcome of the issue. *See Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd*., 385 F.3d 1291, 1299 (10th Cir. 2004). Finally, the party seeking jurisdictional discovery bears the burden of proving legal entitlement to it and demonstrating prejudice if not granted. *Grynberg*, 490 Fed. Appx at 103 (citing *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 (10th Cir. 2010)).

The Court recognizes that the guidance above sets a floor, not a ceiling, on permitting discovery. Nonetheless to ensure it acts within the appropriate limits on its discretion, the Court

---

[3] The procedural recitation omits that MGM filed an earlier motion to dismiss for lack of personal jurisdiction in February 2017. [Doc. 8]. Likewise, Med Flight filed an earlier motion for jurisdictional discovery [Doc. 16]. MGM voluntarily withdrew its motion and Med Flight filed an amended complaint, which together rendered these motions moot as confirmed in a notice filed by MGM. [Doc. 25].

will examine the factual issues raised in MGM's motion to determine the extent to which discovery will assist in resolving the issue of personal jurisdiction.

## III. PERSONAL JURISDICTION UNDER ERISA

The Court's evaluation necessarily turns on the substantive elements of the personal jurisdiction analysis. When a defendant moves to dismiss for lack of jurisdiction, the plaintiff must make a *prima facie* showing "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007) (citation and quotation marks omitted). The Court must "accept as true any allegations in the complaint not contradicted by the defendant's affidavits, and resolve any factual disputes in the plaintiff's favor." *Id.*

ERISA cases employ a different jurisdictional inquiry than the traditional long-arm statute analysis because ERISA expressly authorizes nationwide service of process. *See Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) ("When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction.") (Citation omitted). The initial question therefore is *not* whether the defendant has satisfied the forum state's long-arm statute or the constitutional minimum-contacts test, but whether the defendant may be found and served in *any* district of the United States. *Compare id.* (citing 28 U.S.C. 29 U.S.C. § 1132(e)(2) *with Wenz v. Memery Crystal*, 55 F.3d 1503, 1506-07 (10th Cir. 1995) (describing a two-step process in which the Court "initially determine[s] whether the exercise of jurisdiction is sanctioned by the [State's] long-arm statute" and then considers contacts)).

Although ERISA facially requires only some presence in the United States, the Tenth Circuit has rejected a singular "national contacts" approach as outside due-process bounds. *See*

*Peay*, 205 F.3d at 1211 ("[D]ue process requires something more" than the 'national contacts' test," which allows "a plaintiff [to] sue a defendant in any federal court in the United States, regardless of the defendant's contacts[.]").  In other words, to pass constitutional muster, "the plaintiff's choice of forum [must] be fair and reasonable to the defendant" and "protect[] individual litigants against the burdens of litigation in an unduly inconvenient forum." *Id.* at 1212 (citation omitted).

The burden, however, is on the defendant "[t]o show that the exercise of jurisdiction in the chosen forum will make litigation so gravely difficult and inconvenient that [it] unfairly is at a severe disadvantage in comparison to [its] opponent." *Id.*  In assessing inconvenience, a court should consider: (1) the extent of the defendant's contacts with the [forum]";  (2) "the inconvenience" of defending in a forum other than the defendant's place of business or residence, "including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought"; (3) "judicial economy"; (4) "whether discovery proceedings will take place outside" the defendant's state(s); and (5) "the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business." *Id.* (citation omitted).

In sum, two categories of factual considerations will determine the outcome of the issue and guide the prejudice analysis: (1) facts demonstrating MGM resides or may be found within *any* district of the United States; (2) facts tending to demonstrate constitutional unfairness or inconvenience.

## A. **Parties' Jurisdictional Facts**

Med Flight alleges the following basis for personal jurisdiction in its amended complaint:

(1) Med Flight is a New Mexico corporation with its principal place of business in Albuquerque;

(2) MGM is a Delaware company with its principal place of business in Las Vegas, Nevada and

has other locations in New York City, New York, Biloxi, Mississippi, Atlantic City, New Jersey,

Detroit, Michigan, National Harbor, Maryland, Springfield, Massachusetts, Elgin, Illinois, and

various locations in China; (3) Las Vegas is 600 miles from Albuquerque; (4) Mr. Hernandez

executed an assignment of benefits document in favor of Med Flight; (5) Med Flight submitted a

claim for payment to erstwhile defendant Sierra; and (6) MGM and UMR denied demands for

payment by sending written denials to Med Flight in Albuquerque. [Doc. 14, ¶¶ 1-14].

MGM submits an affidavit from its Vice President and General Counsel Nathan Lloyd.

Lloyd testifies that (1) Mr. Hernandez is a resident of Nevada; (2) MGM has no authorization,

licenses, or registration to conduct business in New Mexico; (2) MGM has no real estate

holdings, offices, employees, representatives, service centers, bank accounts, and telephone

listings in New Mexico; and (3) has no mangers, registered agents or other individuals

authorized to accept service of process in New Mexico. [*See* Doc. 21-1, Lloyd Aff., ¶¶ 1-16]. In

a second affidavit, Lloyd swears MGM is the plan administrator and the plan is run out of

Nevada. [*See* Doc. 26-1, 2nd Lloyd Aff., ¶¶5-7]. When viewed against each other, the parties

submissions do not conflict with each other and present no factual disputes that would

necessarily require discovery. The above, however, is not exhaustive of the facts to be

considered in the second step of the two-step analysis.

**B.  Statutory Factors**

MGM concedes it may be found (and was actually served) in at least *one* district of the United States.  The *statutory* basis for personal jurisdiction is therefore satisfied.  Although the parties devote some time to discussing ERISA's *venue* factors, *see* 29 U.S.C. 1132(e)(2) (allowing case to be brought "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found"), personal jurisdiction is a *separate* inquiry and MGM did not ask to transfer *venue*.  On this prong of the jurisdictional inquiry, the Court determines there is a very low probability that discovery would have any effect on the outcome since this matter is undisputed.

**C.  *Peay* Factors**

What remains are *Peay*'s constitutional unfairness or inconvenience factors and whether discovery would be outcome determinative such that denial of Med Flight's motion would be prejudicial.  In this regard the underlying record is underdeveloped. To be fair, MGM's lack of property holdings, employees, agents, representatives, locations, etc. in New Mexico suggest a lack of contacts with New Mexico under the first *Peay* factor and Las Vegas is 600 miles from Albuquerque, which may (or may not) suggest some inconvenience under the second consideration.  Nonetheless, it is unclear the extent to which defending the case in the District of New Mexico would actually be inconvenient in light of MGM's worldwide operations, even if MGM is not in New Mexico itself.  Similarly, it is unclear how litigating in New Mexico might affect MGM's access to counsel, how judicial economy is disserved if the parties continue to litigate in New Mexico, how the expense of discovery proceedings outside MGM's places of operations would be constitutionally prohibitive, and the what, if any, impact MGM's ERISA activities have beyond its places of operations.

The Court is mindful that MGM purports to address the *Peay* framework in its papers. Yet there is no record support for that analysis except as noted above—as set forth in the Lloyd affidavits. The remaining analysis constitutes at best the argument of attorneys, which no matter how persuasive, is not a substitute for factual support in the record. As MGM correctly recognizes, *it*, not Med Flight, has the burden to establish that litigating in New Mexico will be "so gravely difficult and inconvenient that [MGM] unfairly is at a severe disadvantage in comparison to [its] opponent." *Peay*, 205 F.3d at 1212 (citation omitted). Indeed, the Court could allow that burden to control and conclude that jurisdictional discovery would not affect the outcome because MGM failed to show inconvenience. Rather than do so, however, the Court concludes that discovery on the *Peay* factors can only assist in resolving the dispositive issue.

## IV. SCOPE OF DISCOVERY

The decision to allow jurisdictional discovery does not end the inquiry; the Court must determine the appropriate scope of discovery. In that regard, the Tenth Circuit has emphasized "[a]s with the court's handling of discovery in other stages of litigation, in the context of a [motion to dismiss for lack of jurisdiction], . . . the district court [is given] much room to shape discovery." *Breakthrough Mgmt.*, 629 F.3d at 1188-89. The Court is cognizant of the high cost of litigation and engaging in discovery. Nonetheless, the countervailing interest of having sufficient information to make the threshold jurisdictional determination tips the scale in favor of allowing some limited discovery. The Court will therefore permit Med Flight to propound 15 interrogatories, 15 requests for production, and 15 requests for admission on MGM. Med Flight must narrowly tailor its requests to the constitutional, inconvenience factors. To avoid duplication should MGM raise venue at some point, Med Flight may seek information related to where the alleged breach of the plan occurred and where it is administered.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** Med Flight's motion for jurisdictional discovery [Doc. # 24]. Accordingly, it is **ORDERED** that Med Flight may propound no more than 15 interrogatories, 15 requests for production, and 15 requests for admission on MGM on or before **June 8, 2017**. The requests must be sent together as one package and are waived if not sent at one time. MGM must respond to any discovery on or before **July 10, 2017**. To the extent Med Flight's instant motion for discovery [Doc. 24] contains a request to extend time to respond to the underlying motion to dismiss for lack of jurisdiction [Doc. 21], it is **DENIED** as moot in light of the Court's order granting Med Flight's separate, unopposed motion for an extension of time. [Doc. 31].

It is further **ORDERED** that Med Flight's first motion for jurisdictional discovery [Doc. 16] is also **DENIED** as moot.


KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE