IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MED FLIGHT AIR AMBULANCE, INC.,

      Plaintiff,

                                                              No. 1:17-cv-00246-WJ-KRS

v.

MGM RESORTS INTERNATIONAL;
and UMR, INC.,

      Defendants.

## ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL, DIRECTING DEFENDANT MGM RESORTS INTERNATIONAL TO SUPPLEMENT RESPONSES, AND DENYING AS MOOT PLAINTIFF'S REQUEST FOR EXPEDITED CONSIDERATION

**THIS MATTER** comes before the Court on Plaintiff Med Flight Air Ambulance, Inc.'s motion to compel responses to court-authorized discovery on the issue of personal jurisdiction. [Doc. 39]. Med Flight contends that Defendant MGM Resorts International did not fully answer interrogatories 9, 10, and 12 along with requests for production 1-5.[1] MGM objected on numerous grounds, primarily centered on its belief that these requests were insufficiently tailored to the limited scope of discovery allowed. The Court heard oral argument on the on the motion on September 11, 2017, and took the matter under advisement. The Court now **GRANTS IN PART AND DENYS IN PART** Med Flight's motion to compel.

### I. BACKGROUND

Med Flight sued MGM and Defendant UMR, Inc., the administrator of MGM's self-insured employee plan, when they refused to pay Med Flight for the medivac of Adrian

---

[1] During the hearing and in its reply, Med-Flight confirmed it seeks relief only with respect to the interrogatories and requests for production identified above despite a more universal demand for complete answers in its "Rule-37"correspondence to MGM. [*Compare* Doc. 39-1 with Doc. 45]. In light of this concession, the Court has only considered the specific requests and responses that appear to be in dispute.

Hernandez from El Paso, Texas to Las Vegas, Nevada.[2] [Doc. 14]. After the case was removed to this Court, MGM moved to dismiss for lack of personal jurisdiction. [Doc. 21]. Although MGM concedes UMR has ties to New Mexico, MGM contends that New Mexico is a constitutionally inconvenient forum—MGM contends it has no presence, property, employees, or other connections that would render it amendable to suit here. [Doc. 21]. Before responding to MGM's motion to dismiss, Med Flight sought, and received, the Court's permission to conduct limited jurisdictional discovery. [Docs. 24, 33].

In its May 26, 2017 order, the Court allowed Med Flight to propound fifteen interrogatories, fifteen requests for admission, and fifteen requests for production "narrowly tailored" to constitutional inconvenience factors outlined in *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000). [Doc. 33]. Med Flight subsequently served its written discovery, and MGM tendered responses and objections. Dissatisfied with information given (and withheld), and after exchanging correspondence with MGM about the sufficiency of MGM's objections, Med Flight filed the instant motion to compel seeking complete answers to interrogatories 9, 10, 12 and requests for production 1-5. [Doc. 39].

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(b)(1) allows the Court to limit discovery, including interrogatories and requests for production. *See also* Fed. R. Civ. P. 33(a) & 34(a). Thus, the Court's requirement that Med Flight "narrowly tailor" its request to the *Peay* considerations controls, not Rule 26's broader "proportionality" provision that governs the usual case. *See* Fed. R. Civ. P. 26(b)(1) (providing that "[u]nless otherwise limited by court order . . . Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

---

[2] The parties do not dispute that Med Flight is an "employee" for purposes of the ERISA-governed plan at issue here because Adrian Hernandez, an MGM employee, assigned his rights to payment under the MGM's plan to Med Flight.

defense and proportional to the needs of the case . . . ."); *Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1188 (10th Cir. 2010) (discussing the trial court's "wide discretion" to fashion discovery on jurisdictional contests).

Under *Peay*, Med Flight's discovery must focus on (1) the extent of the defendant's contacts with the [forum]"; (2) "the inconvenience" of defending in a forum other than the defendant's place of business or residence, "including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought"; (3) "judicial economy"; (4) "whether discovery proceedings will take place outside" the defendant's state(s); and (5) "the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business." 629 F.3d at 1188 (citation omitted). Within this scope, Federal Rule of Civil Procedure 37 authorizes Med Flight to move to compel discovery responses that are incomplete or evasive where good faith attempts at resolving disputes have failed. *See* Fed. R. Civ. P. 37(a).

### III. ANALYSIS

#### A. <u>Interrogatories</u>

In interrogatories 9, 10 and 12, Med Flight asked MGM to (1) describe UMR's claims processing duties under MGM's "self-insured health insurance plan" (No. 9); (2) identify lawsuits since 2010 MGM or "affiliate resort" employees in Maryland, New York, Mississippi, New Jersey, Michigan, Massachusetts or Illinois have filed (No. 10); and (3) identify employees and agents involved in denying Med Flight's claim (No. 12). MGM did not answer interrogatory 9 and partially answered interrogatories 10 and 12. MGM justified its responses by interposing a

laundry list of objections.[3] Only the common objection warrants analysis: MGM's claim that the interrogatories are not "narrowly tailored" to *Peay* factors.[4] The Court concludes the interrogatories all fall within *Peay*'s ambit, but some of the requests require modification.

Contrary to MGM's suggestion, the presence (or absence) of duties governing the processing of employee claims outside of Nevada, as sought in interrogatory 9, bears on the extraterritorial nature of MGM's operations as well as connection to the District of New Mexico. Similarly, the presence (or absence) of duties dictating where claims are processed could shed light on the situs of discovery. Without belaboring the point, interrogatory 10's request for lawsuits by MGM employees may demonstrate the national (or state specific) character of MGM's business. Basic information on pending litigation could also show (or disprove) that

---

[3] For interrogatory 9, MGM's objected that: (1) Med-Flight did not provide a timeframe; (2) Med-Flight failed to define "self-insured health insurance plan"; (3) Med-Flight exceeded the fifteen-interrogatory limit by interposing too many subparts in previous requests; and (4) responding could include the production of "confidential, proprietary, and commercially sensitive" documents that would require the entry of "an appropriate confidentiality order." The Court overrules these objections. There is only one employee plan at issue in this case, and MGM's demand that the term be further defined is disingenuous. *See Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 310 (D. Kan. 1996) (a party "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories"). MGM waived its "subpart" challenge—that Med-Flight exceeded the 15-interrogatory limit by packing more than one question into a numbered request—when MGM decided to answer some interrogatories but not others. *See Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be[en] propounded should object to all . . . or file a motion for protective order"; "[b]y answering some and not answering others, the [defendant] waived this objection"). Finally, a confidentiality order is now in place, and MGM's concerns over disclosing sensitive information have no continuing validity. For Interrogatory 10, MGM repeats the same objections, which are overruled as stated above, but adds that the request seeks information that is not relevant or proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1). MGM's "proportionality" argument is misplaced because that requirement applies only where the Court does not limit discovery. *See id.* ("Unless otherwise limited by court order . . . [p]arties may obtain discover regarding any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case. . . .") (emphasis added). The Court limited discovery here. [Doc. 33]. For interrogatory 12, MGM lodged the same objections, which the Court overrules as stated above.

[4] In response to Med Flight's motion to compel, MGM also makes two more general challenges in defense of the limited information it provided to discovery requests: (1) Med Flight admitted it received sufficient information to responds to the motion to dismiss for lack of personal jurisdiction; and (2) Med Flight did not meet and confer on interrogatory 9. The first assertion appears to be a waiver argument, but because MGM does not offer any legal basis to support it, the Court will not consider further. Moreover, neither Rule 33 nor 34 include among the permissible objections one that permits a party to withhold information because of the party's belief that the other side concedes it has received sufficient information. The second argument has some traction; it appears that Med Flight did not mention its concerns in the Rule 37 correspondence. The parties are reminded of their duty to meet and confer under the Rules, but because the Court must address the other discovery requests, it analyzes interrogatory 9 for the sake of efficiency and because MGM does not contend it would have changed its response had Med Flight sought its input.

MGM defends actions in a multitude of jurisdictions that are neither MGM's principal place of business nor MGM's state of incorporation. The identity of employees involved in the claim denial, the subject of interrogatory 12, would allow Med Flight to verify MGM's blanket assertion that all employees are located in Nevada and independently research employees' connection to New Mexico (and other jurisdictions). Likewise, any agents involved in the decision making are relevant because an agent's contact with a forum may be imputed to the principal. [5] *See Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can.*, 703 F.3d 488, 493-494 (10th Cir. 2012).

The Court, however, agrees with MGM that interrogatory 9 temporally is too broad. The relevant duties are those in effect at the time Med Flight's claim was processed and ultimately denied. As written, interrogatory 10 is confusing. MGM is the only entity for which the Court authorized discovery; to the extent Med Flight seeks information on "affiliates," whatever the term may mean, the Court will not permit discovery. More than seven years of lawsuits also strikes the Court as unnecessary. While Med Flight understandably wants a full picture of MGM's litigation, this goal is achieved by limiting the timeframe from January of 2011 to October 2016, representing the five year period up until MGM finally denied payment. In sum, the Court orders MGM to answer interrogatory 9 and supplement interrogatories 10 and 12 subject to the foregoing clarifications and the parties' agreed upon confidentiality agreement.

### B. Requests for Production

Requests for production 1-5 asked MGM for: (1) the employee health plan at issue; (2) the summary plan description and amendments thereto; (3) contracts with UMR, including amendments and documents defining UMR and MGM's relationship; (4) correspondence related

---

[5] If there were not agents involved, then MGM was obligated to say so under oath and not simply refuse to answer that part of the interrogatory.

to the determination of Med Flight's claim; and (5) electronically stored information related to the claim. It is undisputed that that MGM did not produce any documents, relying on the same objections[6] and contention that the requests exceed the permissible scope of jurisdictional discovery. The Court concludes these requests are relevant under *Peay*, but require additional tailoring.

The plan itself (RFP 1) and the manner in which MGM has summarized the plan (RFP 2) may document how MGM handles claims from across the country, showing whether contact with a particular forum is mandated as well as MGM's reach into the national economy. Additionally, the *de facto* and *de jure* relationship between UMR and MGM, as sought in the third request for production, is critical—it bears directly on whether UMR's conceded connection to New Mexico should be imputed to MGM. Finally, correspondence, documents, and electronically stored information related to the claim (RFPs 4 & 5) potentially implicate conduct directed at New Mexico or more broadly across the country.

At the same time, only the plan at issue, the summary plan description(s), and contract(s) between UMR and MGM in effect at the time Med Flight's claim was processed and ultimately denied are necessary to the jurisdictional analysis. The Court will not permit discovery beyond this timeframe. The Court is also cognizant that, as written, requests four and five could involve the production of privileged material. Obviously, MGM should not produce documents protected by the attorney-client privilege, but it was incumbent upon MGM to produce a privilege log when MGM objected on this ground. *See* Fed. R. Civ. P. 26(b)(5)(ii). At this juncture, the Court will not deem MGM's failure to comply a waiver. Instead, the Court reminds the parties that when asserting privilege they must "describe the nature of the documents,

---

[6] MGM's laundry list of objections is discussed and rejected in footnote 2. The Court sees no reason to analyze the objections further in the context of the requests for production and overrules the objections for the same reasons.

communications, or tangible things not produced or disclosed" sufficient to "enable other parties to assess the claim." *Id.*

In sum, MGM shall produce the documents Med Flight requested subject to the above modifications and the parties' agree confidentiality order.

## IV. CONCLUSION

For the reasons stated above, **IT IS, THEREFORE, ORDERED** that Med Flight's motion to compel is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that on or before **September 28, 2017** MGM respond to Interrogatory 9 and supplement the answers to Interrogatories 10 and 12 subject to the modifications set forth above and the parties' agreed upon confidentiality order.

**IT IS FURTHER ORDERED** that on or before **September 28, 2017**, MGM produce the documents requested in Requests for Production 1-5 subject to the modifications set forth above and the parties' agreed upon confidentiality order.

**IT IS FURTHER ORDERED** that Med Flight's request for expedited consideration contained within the motion to compel is **DENIED** as moot.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE