# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MED FLIGHT AIR AMBULANCE, INC.,

     Plaintiff,

    v.                                                                                  No. 17-CV-0246 WJ/KRS

MGM RESORTS INTERNATIONAL, SIERRA
HEALTH-CARE OPTIONS, UMR, INC., and
BEATRIZ HERNANDEZ, SPECIAL
ADMINISTRATOR OF THE ESTATE OF ADRIAN
HERNANDEZ, DECEASED,

     Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT MGM'S MOTION TO DISMISS
## BASED ON LACK OF PERSONAL JURISDICTION
## and
## DENYING DEFENDANT'S REQUEST FOR ATTORNEY'S FEES and COSTS

THIS MATTER comes before the Court upon the Renewed Motion to Dismiss First Amended ERISA Complaint for Lack of Personal Jurisdiction **(Doc. 21)** filed by Defendant MGM Resorts International (hereinafter "Defendant" or "MGM"). Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion regarding lack of personal jurisdiction is well-taken and therefore granted, but that the request for attorney's fees is denied.

## BACKGROUND

This case arises from a denial of insurance benefits for Mr. Hernandez in connection with a medical helicopter ride from a hospital in El Paso, Texas to Las Vegas, Nevada.[1] Plaintiff Med Flight Air Ambulance, Inc. ("Med Flight") is a New Mexico corporation with its principal business location located in Albuquerque, New Mexico.

MGM is a Delaware corporation with its principal business location in Las Vegas, Nevada. MGM employed Adrian Hernandez and provides a self-insured health insurance plan to its employees, entitled the "MGM Resorts Health and Welfare Benefit Plan" ("MGM Plan"). MGM is the Plan Administrator of the MGM Plan, and Mr. Hernandez was a participant and beneficiary of the MGM Plan. Defendant UMR, Inc. ("UMR") is a Delaware corporation that is registered and licensed to do business in the state of New Mexico. UMR is a Claims Administrator, along with MGM, of the MGM Plan.

On January 12, 2017, Med Flight filed a complaint in the Second Judicial District Court, County of Bernalillo, asserting breach of contract and unfair trade practices. Defendants removed the case to federal court on February 17, 2017 based on federal question jurisdiction under the federal ERISA statute (29 U.S.C. §1132(a)(1)(B) and §1132(g)(1), and based on diversity jurisdiction. According to the complaint, in December 2014, Mr. Hernandez was admitted to Del Sol Medical Center in El Paso, Texas as the result of a medical condition that required emergency medical services. When it was determined that there was no doctor available in El Paso who could treat Mr. Hernandez, he and his medical providers contacted Plaintiff Med Flight and requested air ambulance transport to a medical facility in Las Vegas,

---

[1] It is not clear from the briefing where the air transport originated. Defendant states that the air transport was from San Antonio, Texas to Las Vegas, Nevada and on the same page in the opening brief also states that the initial hospital for the trip was in El Paso, Texas. The Court assumes that the transport originated in El Paso, since according to the complaint, Mr. Hernandez was flown by emergency air transport from El Paso, Texas to Valley Hospital and Medical Center in las Vegas, Nevada. Doc. 1-1, ¶10. However, the point of origin for the air transport is not material and does not affect the Court's analysis herein.

Nevada where the necessary medical services were available and where Mr. Hernandez would have family support.  Mr. Hernandez signed various documents with Med Flight including an assignment of insurance benefits and agreement to pay any balances for services provided (hereinafter, "air transport" contract" or "air transport agreement"). Med Flight accepted Mr. Hernandez' agreements in Albuquerque, New Mexico on December 10, 2014 and then transported Mr. Hernandez from Del Sol Medical Center in El Paso, Texas to Valley Hospital and Medical Center in Las Vegas, Nevada.  The case caption references the Estate of Mr. Hernandez and while the pleadings do not contain much further discussion on Mr. Hernandez, the Court assumes that he passed away subsequent to his being transported from El Paso to Las Vegas.

In this lawsuit, Plaintiff Med Flight claims that Defendants (including MGM) owed Mr. Hernandez as Plan participant—and therefore Plaintiff via assignment—purported benefits in the form of payment of the usual and customary charges for the emergency air transport of Mr. Hernandez.  The Amended Complaint has three counts asserted under ERISA.  Count I alleges a breach of agreement between Defendants and Med Flight under 29 U.S.C. §1132(a)(1)(B); Count II asserts requested relief in the form of attorney fees and costs under §1132(g)(1); and Count III seeks relief under §1132(c) which provides for other civil enforcement penalties for violation of the statute.[2]

MGM claims that Plaintiff is under the erroneous impression that MGM owes Mr. Hernandez (the Plan participant) –and therefore Plaintiff through assignment, benefits in connection with medical air transport from a hospital in El Paso, Texas to Las Vegas, Nevada. In this motion, Defendant contends that it should be dismissed from this lawsuit on the basis of

---

[2] References to "Section 502(a)(1)(b)" in the briefs are intended to reference 29 U.S.C. §1132(a)(1)(b), and references to "Section 502(g)(1)" are intended to reference 29 U.S.C. §1132(g)(1).  *See* Doc. 21 at 2, n.2.

lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) and in addition, seeks reasonable attorneys' fees and costs pursuant to §1132(g)(1).

## I.    Legal Standard

At the pleading stage, plaintiffs need only make a prima facie showing of personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  However, cases involving personal jurisdictional questions under ERISA are treated somewhat differently.  Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) "whether the applicable statute potentially confers jurisdiction" by authorizing service of process on the defendant and (2) "whether the exercise of jurisdiction comports with due process."  *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (citing *Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987) (finding in a federal question case that, before a federal court may exercise personal jurisdiction over a defendant, there must be "a basis for the defendant's amenability to service of summons").

The MGM Plan at issue in this case is subject to ERISA.  The last clause of 29 U.S.C. § 1132(e)(2) authorizes nationwide service of process.  *See Peay,* 205 F.3d at 1210 ("When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction."). Thus, provided that due process is satisfied, §1132(e)(2) confers jurisdiction over Defendants by authorizing service of process on them.  *Id.* at 1210*; Cory v. Aztec Steel Bldg., Inc*., 468 F.3d 1226, 1232-1233 (10th Cir. 2006) ("Without federal statutory authorization for nationwide service, we need not proceed to the Fifth Amendment inquiry").

In federal question cases, such as this one, personal jurisdiction flows from the Due Process Clause of the Fifth Amendment, rather than the Fourteenth Amendment. *See Republic of*

*Panama v. BCCI Holdings et al.,* 119 F.3d 935 (11th Cir. 1997) ("It is well established that when

. . . a federal statute provides the basis for jurisdiction, the constitutional limits of due process

derive from the Fifth, rather than the Fourteenth, Amendment.").   Due process under the

Fourteenth Amendment requires that "maintenance of [a] suit . . . not offend traditional notions

of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316

(1945) (internal quotation marks and citation omitted).   These limits on a court's ability to

exercise jurisdiction are designed to protect defendants by "providing them with fair notice that

their activities will render them liable to suit in a particular forum."  *Peay,* 205 F.3d at 1211

(citing *Republic of Panama,* 119 F.3d at 945 and *Burger King Corp. v. Rudzewicz,* 471 U.S. 462,

470–77 (1985)).   In *Peay,* the Tenth Circuit noted that although the United States Supreme Court

has not yet defined Fifth Amendment due process limits on personal jurisdiction, the due process

clauses of the Fourteenth and Fifth Amendments "are virtually identical" and were both

"designed to protect individual liberties from the same types of government infringement."  205

F.3d at 1212 (citing *Republic of Panama,* 119 F.3d at 945).   Based on this reasoning, the Tenth

Circuit held that:

> in a federal question case where jurisdiction is invoked based on nationwide
> service of process, the Fifth Amendment requires **the plaintiff's choice of forum
> to be fair and reasonable to the defendant.**   In other words, the Fifth
> Amendment "protects individual litigants against the burdens of litigation in an
> unduly inconvenient forum."

205 F.3d at 1212 (emphasis added).   To establish that jurisdiction does not comport with Fifth

Amendment due process principles, the burden is on defendant to first demonstrate "that his

liberty interests actually have been infringed."  *Id.*   In meeting this burden of showing

"constitutionally significant inconvenience," *Peay* set forth the following five factors:

> (1) the extent of the defendant's contacts with the place where the action was
> filed;

(2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought;

(3) judicial economy;

(4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and

(5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.

205 F.3d at 1212.[3] If a defendant successfully demonstrates that litigation in the plaintiff's chosen forum is unduly inconvenient, then "jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant." *Republic of Panama,* 119 F.3d at 948. To determine whether infringement on the defendant's liberty is justified sufficiently by government interests, courts conduct a kind of balancing inquiry by examining: (a) the federal policies advanced by the statute, (b) the relationship between nationwide service of process and the advancement of these policies, (c) the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and (d) concerns of judicial efficiency and economy.

## II.     Facts Relating to Jurisdiction

---

[3] Defendant also embraces the five-factor test set out in *Peay* but for the first factor, MGM relies on the traditional Fourteenth Amendment "minimum contacts" test. Plaintiffs correctly point out that this test does not apply here. In the traditional Fourteenth Amendment due process analysis, the minimum contacts inquiry depends on the "quality and nature" of a defendant's activities within the state and may be met in either of two ways. If the activities of a nonresident entity are extensive, systematic and continuous, it may subject it to jurisdiction within the forum state on a cause of action unrelated to those activities. However, if the activity is less extensive, the cause of action must arise out of or be connected with the defendant's contacts related to the forum. *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060 (10th Cir. 2007) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16 (1984)) and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). Because this case involves the ERISA statute, the traditional long-arm statute and minimum contacts for the due process inquiry is not used, as explained previously. *See also Peay,* 205 F.3d at 1211 (rejecting the "national contacts test" because due process requires "something more" than minimum contacts "with the United States as a whole").

The jurisdictional facts are generally undisputed. The exhibits supporting these facts are contained in the briefs and are not restated here. Defendant has also submitted two affidavits of Nathan Lloyd, Senior Vice President and Legal Counsel for MGM, who is located in Las Vegas, Nevada, to support their statement of facts. *See* Docs. 21-1 and 61-1. Plaintiff Med Flight claims to dispute a few of Defendant's facts, but its responses fail to offer actual evidence supporting the existence of a dispute. For most of the facts on which Plaintiff claims there exists a dispute, Plaintiff contends that additional discovery will uncover the evidence necessary to create the dispute. *See* Pltff's Resp. to Defts' Facts 12, 13, 14 & 18. However, the time for jurisdictional discovery has come and gone. The Court suspended ruling on MGM's previous motion to dismiss (Doc. 24) so that Plaintiff could engage in limited discovery to address the jurisdictional issue raised in that motion. *See* Doc. 33 (denying as moot MGM's first motion to dismiss in light of the Court's allowance of jurisdictional discovery requested by Med Flight). This should have provided Plaintiff with the information necessary to be able to respond to MGM's renewed motion to dismiss which is now before the Court. Plaintiff offers no evidence to rebut Defendant's Facts 12, 13, 14 and 18. Hoping to uncover some in general discovery later on in time does not suffice to create an issue of fact, and the Court deems those facts as admitted. Plaintiff also claims that Facts 7, 22, 23 and 26 are disputed, and the Court takes up these "disputes" in the following factual presentation.

Adrian Hernandez, the deceased Plan participant and employee of MGM, was a resident of Las Vegas, Nevada, not a resident of New Mexico. MGM believes Mr. Hernandez' relatives, to the extent necessary for testimony, are located in Nevada, or at least not located in New Mexico. There is no allegation that Mr. Hernandez' employment with MGM was ever at a location outside of Nevada.

None of the Defendants (including MGM) are citizens of New Mexico. MGM's headquarters is located in Las Vegas, Nevada. None of the hospital facilities in question is located in New Mexico. The initial hospital, Del Sol Medical Center, is located in El Paso Texas, and the destination hospital, Valley Hospital and Medical Center, is located in Las Vegas, Nevada.

MGM provides a self-insured health insurance plan to its employees. As mentioned previously, the MGM Plan is a self-funded employee group health plan subject to ERISA; MGM is the Plan administrator and Defendant UMR is the claims administrator. The MGM Plan is administered in Nevada, and there is a "governing law" provision in the Plan states that: "The Plan shall be construed in accordance with the laws of the State of Nevada, to the extent not preempted by federal law." MGM has never administered, nor does it currently administer, the Plan in New Mexico.

MGM is not qualified, licensed, authorized, or registered to transact business in New Mexico, and has no business locations in the state. It does not own or operate any business of any kind, including any hotels, in New Mexico. However, Plaintiff disputes this fact (Fact 7), claiming that while MGM does not keep an office in New Mexico, it does conduct "an extensive amount of advertising and soliciting in New Mexico," based on the fact that the hotels in Las Vegas specifically target University of New Mexico Lobo fans because the NCAA Division I basketball tournament for the Mountain West Conference is held annually in Las Vegas. As support for this claim, Plaintiff offers as an exhibit a copy of an article contained in the Albuquerque Journal from March 2016 titled "Albuquerque makes its mark on Vegas" in which MGM Resort's vice president in charge of sports booking operations stated that the Mirage "is the official hotel of the New Mexico Lobos and of San Jose State." Pltff's Ex. 2, Doc. 55-2. The

article also states that one of the college basketball tournaments would be played at the MGM Grand Garden Arena.

The Court deems Fact 7 as admitted, notwithstanding the submission of the Albuquerque Journal article, for several reasons. First, the Court agrees with Defendant in that the article is inadmissible hearsay. *Club Car Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775 (10th Cir. 2004) (inadmissible hearsay cannot be considered on a motion for summary judgment); *see also Miles v. Ramsey*, 31 F. Supp. 2d 869, 876 (D. Colo. 1998) (noting that courts have uniformly found that newspaper articles are inadmissible hearsay when the article was not written or acknowledged by the defendant, yet is produced as proof of facts stated in that article). Second, the article does nothing to challenge Defendant's Fact 7 which states only that MGM does not own or operate any business of any kind, including any hotels, in New Mexico.

There are no MGM-operated resort locations in New Mexico. MGM has no offices, distribution or service centers, bank accounts, mailing addresses, or telephone listings in New Mexico. MGM does not own or lease any real property in New Mexico and has no personnel, employees, or sales representatives in the state. MGM has no general or other managers in New Mexico, and no person or subsidiary in the state who exercises direction or control over them. MGM has no registered agent or other person authorized to accept service of process in New Mexico. Accordingly, none of MGM's personnel who had any role in the decisions regarding the denial of benefits and/or payments to Plaintiff are, or were, located in New Mexico.

None of MGM's decision-making regarding Plaintiff's claim, including whether to deny Plaintiff's claim, took place in New Mexico, and all of MGM's employees involved in the decision-making process regarding Plaintiff's claim are located in Nevada. UMR is retained only to perform ministerial functions, not discretionary functions, in connection with its claims

processing duties regarding the Plan, and is not named or considered a "Plan Administrator" for purposes of ERISA.[4] MGM also believes at least some of the UMR and SHO[5] employees who were involved with escalating and researching Plaintiff's claim appeal are located in Nevada.

During the time frame relevant to this matter, there were no lawsuits brought by any employee of MGM, or any employee of any resort operated by MGM, against MGM in any state outside of Nevada. Las Vegas, Nevada, is approximately 600 miles from Albuquerque, New Mexico.

There are no allegations or evidence supporting or showing that prior authorization was received from the MGM Plan prior to Plaintiff's medical transport of Mr. Hernandez. To the contrary, it appears no prior authorization was obtained.[6]

Fact 23 states that Plaintiff has obtained standing in this case by "stepping into the shoes of" Mr. Hernandez through an assignment of benefits for the MGM Plan. In response, Med Flight notes that the air transport contract was executed between Mr. Hernandez and Med Flight, which is located in New Mexico, and that the agreement was subject to New Mexico law. In focusing on the air transport contract instead of the MGM Plan, Plaintiff is off the mark. Med Flight admits that its claims are based on the assignment of benefits pursuant to the MGM Plan, which is subject to Nevada law under its governing provision. *See* Am. Compl., Doc. 14, ¶11

---

[4] In its response, Plaintiff concedes the truth of these factual statements, but is optimistic that "additional discovery will likely lead" to the identification of other individuals who had a role in the decision-making and to "much more detail" concerning MGM's characterization of UMR's role as ministerial. Doc. 55 at 8. As the Court has already explained, however, the parties have completed additional jurisdictional discovery requested by Med Flight, and speculation regarding what additional future discovery may unearth does not create a factual dispute.

[5] "SHO" is an acronym for "Sierra Healthcare Options," which is no longer a party to this lawsuit.

[6] This fact, Defendant's Fact 22, pertains to the lack of prior notice of knowledge on the part of MGM. Plaintiff explains that prior authorization was not required because Med Flight's transport of Mr. Hernandez was an emergency transport which does not require prior authorization. This may be, but as Defendant notes, that explanation does not contest the fact at all and has no bearing on the pertinent issue of whether the court lacks personal jurisdiction over MGM, and thus Fact 22 is deemed admitted.

(stating that Mr. Hernandez "signed various documents with Med Flight including an *assignment of insurance benefits* and agreement to pay any balances for services provided").  The reimbursement sought by Med Flight in this lawsuit is pursuant to the MGM Plan, not the air transport agreement between Mr. Hernandez and Med Flight—which means that Fact 23 is not disputed, and the Court deems it as admitted.

In the last jurisdictional fact presented (Fact 26), Defendant states that MGM's outside counsel in this case, the Brownstein Firm, has a Las Vegas office, which MGM has regularly retained in the past on various matters, litigation or otherwise.   Plaintiff disputes this fact, pointing out that the two attorneys who "consistently execute pleadings in this case are located in New Mexico and California" and that counsel who is located in California is not licensed to practice in Nevada but is licensed in both California and New Mexico.  Doc. 55 at 9.  This New Mexico connection, according to Plaintiff, subjects MGM to personal jurisdiction here. Defendant states what the Court believes to be abundantly obvious:  **the only reason MGM was forced to retain counsel licensed to practice in New Mexico is because Plaintiff filed suit in New Mexico**.  In addition, Plaintiff's "disputes" of fact (similar to its other "disputes") do not offer any evidence contrary to Defendant's Fact 26, which is deemed undisputed and therefore admitted.

## III.    Analysis of *Peay* Factors

Defendant contends that based on the five *Peay* factors, jurisdiction over MGM does not comport with due process principles under the Fifth Amendment.  Plaintiff maintains that Defendant cannot meet its burden to show that litigation in this forum imposes on it a "constitutionally significant inconvenience."

### A.    Extent of Defendant's Contacts With New Mexico

Defendant argues that there is no connection between MGM and New Mexico. Based on the collection of undisputed facts which the Court has laid out above, there is at least initially, some merit to Defendant's argument. To sum up a few of these facts: MGM is not qualified, licensed, authorized or registered to transact business in New Mexico. It does not own or operate any business of any kind, including any hotels, in New Mexico, has no offices, distribution or service centers, bank accounts, mailing addresses or telephone listings in this state. MGM does not own or lease any real property in New Mexico, and has no personnel, employees, or sales representatives in New Mexico. None of MGM's personnel who had any role in the decisions regarding the denial of benefits and/or payments to Plaintiff are, or were, located in New Mexico. MGM has no general or other managers in New Mexico, and no person or subsidiary in New Mexico who exercises direction or control over them. Finally, MGM has no registered agent or other person authorized to accept service of process in New Mexico. Doc. 21-1 (Lloyd Aff.). Without any connection to New Mexico, MGM would not have been on notice that it may be haled into court in New Mexico, and the non-existence of such contacts indicates that MGM manifested no intention to submit to New Mexico's jurisdiction.

1. *Med Flight's Air Transport Contract*

Plaintiff attempts to find a connection between MGM and New Mexico based on the air transport contract. Plaintiff contends that Med Flight's "acceptance" of the air transport agreement with Mr. Hernandez in New Mexico renders MGM subject to jurisdiction in a New Mexico federal court. *See* Doc. 14, ¶12.[7] However, personal jurisdiction over a defendant is not dependent on where the *plaintiff* is located, and so the air transport contract between Mr. Hernandez and Med Flight has no bearing on the jurisdictional issue. *See Anderson v. Shiflett*, 435 F.2d 1036, 1038 910th Cir. 1971). The assignment of insurance benefits by Mr. Hernandez

_____

[7] The undisputed facts also infer that because Mr. Hernandez was, at all relevant times, physically present in Texas.

to Med Flight also does not factor into the minimum contacts analysis. According to the undisputed facts, the MGM Plan was executed in Nevada between Mr. Hernandez and MGM—both of whom were either located or resided in that state.

Med Flight claims that MGM does business "all over the United States," *see* Doc. 55 at 13, but the relevant question is whether MGM's contacts with New Mexico exist to a degree that would not make it either unfair or unreasonable to render MGM liable to suit here.

2.    *MGM's customer loyalty program*

Plaintiff next points to MGM's customer loyalty program, which rewards visitors with an "M Life Rewards" card allowing customers to enjoy resort amenities at MGM resort locations. From December 2014 to July 2017, MGM has issued approximately 28,000 M Life Rewards cards to individuals with New Mexico addresses. Plaintiff also notes that MGM sends quarterly mailings "soliciting business to all of its M Life Members, including those in New Mexico." doc. 55-1 at 2 (Resp. to Interrog. No. 1). However, as MGM explains, these loyalty cards are issued only to visitors who themselves choose to travel to one of MGM's resort locations, and thus the loyalty club cards and quarterly mailings are sent to those New Mexico residents who first sought out the MGM resort in Las Vegas as a destination, rather than the other way around.

It is true that the loyalty club program reaches all states. Following Plaintiff's argument to its logical conclusion, MGM should therefore be amenable to suit in all 50 states because its loyalty club program is available everywhere and its members are located all over the country—not just those states where MGM resorts are located. However, this conclusion would be legally erroneous because it relies on the "national contacts" approach to personal jurisdiction in a federal question case—which the Tenth Circuit has expressly rejected in *Peay.* 205 F.3d at 1211

(requiring "something more" to satisfy due process than a showing that defendant have minimum contacts "with the United States as a whole").

### 3. Advertising

Med Flight also contends that MGM engages in extensive advertising and solicitations in various media formats distributed in New Mexico. In its response to Interrogatory No. 5, MGM stated that in 2017, "the states in which 'any form of advertising for any MGM Resort facility' can be said to 'appear,' include all fifty states, as at least some advertising was done, for instance, in at least one national publication." Doc. 55-1 at 6. A defendant's ability to foresee his communications entering the forum state is relevant under *Peay's* jurisdictional analysis. *Touchtone Grp., LLC v. Rink,* 913 F.Supp.2d 1063, 1073 (D. Colo. 2012). Again, under Plaintiff's theory of the analysis, MGM would be subject to personal jurisdiction in every federal court in the country by virtue of its magazine advertising. It is not reasonable to conclude that MGM should foresee its amenability to suit in every state in the country based on the advertising it does in national publications. Also, this conclusion does not comport with the standard set forth by the Tenth Circuit for minimum contacts in federal question cases. National advertising for MGM resorts in all fifty states does not provide MGM with "fair notice" that its activities will render it liable to suit in a particular forum, specifically, New Mexico.

### 4. The Albuquerque Journal article

The Court has already determined that the newspaper article that appeared in the Albuquerque Journal is inadmissible hearsay. The article reports that the Mirage Hotel is the "official" team hotel for the University of New Mexico basketball team, and that Las Vegas is a popular destination spot for Albuquerque sports fans. However, even if the Court were to consider this article, it is not evidence of "minimum contacts" by MGM with New Mexico. The

14

fact that a sports team chooses to stay at an MGM hotel does not necessarily constitute proof that

MGM "advertises and solicits" in New Mexico, any more than a decision by an Albuquerque

company to hold a retreat or an Albuquerque family choosing to have a family reunion at an

MGM hotel, signifies that MGM has advertised or solicited business in New Mexico.

5.      *Traveling by MGM employees*

Med Flight states that MGM "must anticipate" that its employees regularly travel to other

states throughout the country, either for business or pleasure.  It argues that the "nation-wide"

presence of MGM in conjunction with the possibility that some of its employees might require

emergency medical care throughout the country renders it subject to personal jurisdiction here in

New Mexico—and for that matter, anywhere in the country where MGM's employees might

travel.  This argument dispenses with the notion of due process altogether and replaces it with

sheer speculation.  The premise starts out with MGM employees who have not yet embarked on

a possible trip, have not fallen ill or required medical care (or air transport to a medical facility),

and have not filed a lawsuit seeking benefits under MGM's Plan; and yet Plaintiff argues that

MGM would nevertheless be subject to personal jurisdiction in whatever state those employees

might find themselves in.

Med Flight contends that MGM has a "pervasive national presence that includes New

Mexico," Doc. 55 at 12, but this contention does not answer the question of whether there is a

constitutional basis for personal jurisdiction under the Fifth Amendment.  MGM's "national

presence" in the country on the basis of its national advertising and resorts (none of which are

here in New Mexico) does not translate into an actual connection with New Mexico of the sort

that would make it fair to expect MGM to litigate this lawsuit here in this state.

The *Peay* case illustrates the point well by comparison. In that case, the insured was provided in-patient psychiatric services at a Utah hospital. The insured was provided health insurance from her employer, Bell South which was headquartered in Georgia, and the plan was administered by Blue Cross & Blue Shield of Alabama. The plan administrator and Blue Cross ("defendants") pre-certified the insured prior to treatment and also paid the treating physician, a Utah resident, for a portion of the care and treatment. The Tenth Circuit found that defendants' constituted sufficient minimum contacts for personal jurisdiction in the Utah federal court, because defendants "knew or should have known that a dispute over benefits could arise in Utah." *Peay,* 205 F.3d at 1213.

In another case, *Klein et al. v. Cornelius, et al.,* the Tenth Circuit found that a minimum contact with the forum state, while insignificant, was sufficient to satisfy the first *Peay* factor. 786 F.3d 1310, 1318 (10th Cir. 2015). William Cornelius provided legal services in New Hampshire for a friend of the owners of a business entity, Winsome Investment Trust ("Winsome Trust") which paid Cornelius for the legal services rendered. The Commodity Futures Trading Commission brought an action against Winsome Trust in Utah for illegal distribution of funds in a Ponzi scheme, although Cornelius was unaware of its fraudulent activities. In considering the first *Peay* factor, the Tenth Circuit recognized that Winsome Trust's payment originated in Utah, but found that this fact was not "decisive." 786 F. 3d at 1319. However, the court also noted that the "insignificance of contact [was] only one consideration" and Cornelius had not even addressed any of the other *Peay* factors in his opening brief. *Id.* As a result, the Tenth Circuit affirmed the district court's conclusion that it had personal jurisdiction over Cornelius as one of the transferees in the scheme.

Both *Peay* and *Klein* involved minimum contacts showing a direct connection to the state in which the lawsuit was filed (Utah, for both cases). Even though the court in *Klein* found the contact to be "insignificant" (which of course was not dispositive because of the other four factors that had to be considered), there was nevertheless an actual and affirmative connection with the forum state. In contrast with *Peay,* where there was pre-certification for treatment and payment for that treatment, the only basis to establish jurisdiction over MGM in New Mexico is the procurement of out-of-state helicopter transport from an allegedly non-approved, out-of-network provider without prior authorization from the MGM Plan. In contrast with *Peay* and *Klein,* the connection between MGM and New Mexico in this case is tenuous at best and absent at worst.

There must be at least some minimal contact to this state in order to satisfy the first *Peay* factor. For example, in *Pryor v. Metro. Life Ins. Co.*, No. 14-CV-701-SWS-SMV, 2014 WL 12593994, at *3 (D.N.M. Oct. 21, 2014), defendant Whole Foods Market, Inc. ("WFMI") was only a holding company for other operating companies, and lacked authority to transact business in New Mexico. Nevertheless, the District of New Mexico found that WFMI still had some contacts with the state based on evidence that defendant owned the stock of its subsidiaries which did transact business in New Mexico. *Id.* The court recognized that WMFI's contacts may not suffice to convey personal jurisdiction over defendant in a standard "minimum contacts" analysis under the state's long-arm statute, but that while these contacts were "limited," they did exist "to some degree. . . ." *Id.* (citing *Quarles v. Fuqua Indust., Inc.*, 504 F.2d 1358, 1364-65 (10th Cir. 1974) (holding company without continuous and systematic contacts with the forum state was found not to be subject to personal jurisdiction in the forum state based solely on its subsidiary's activities)).

On the first *Peay* factor, there is no showing that MGM could have or should have been reasonably alerted to the possibility of being called upon to defend a case in New Mexico.

B.    Inconvenience to MGM; Discovery Concerns; and Judicial Economy  (Second,
      Third and Fourth *Peay* Factors)

The second *Peay* factor considers the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought.  The third factor considers the probable location of discovery proceedings; and the fourth addresses judicial concerns.

MGM claims that while this case is pending in New Mexico, its business is rooted in Nevada which presents some difficulty with quick and efficient access to counsel and with litigating this case in New Mexico which is almost 600 miles away from its headquarters.  MGM also states that its in-house attorney who is likely to be deposed or who will testify in this case has a Las Vegas office (the Brownstein Firm), and that anticipated witnesses and parties are located outside of New Mexico.

Med Flight focuses on the fact that MGM has resort facilities in multiple states and advertises in multiple mediums on a nationwide basis and that MGM can still employ the Brownstein Firm for this litigation and appear pro hac vice and that counsel would not be overly burdened because appearance of counsel would be unlikely except for trial, and probably unnecessary for discovery or substantive motions.  Plaintiff also suggests that MGM witnesses can be deposed in Las Vegas represented by local counsel at their depositions.  As for any inconvenience posed by the distance between New Mexico and Nevada, Plaintiff observes that there are readily available daily flights from Las Vegas to Albuquerque with several airlines and

that New Mexico and Nevada are separated only by 600 miles and one state. *See Pryor v. Metro. Life Ins. Co.*, No. 14-CV-701-SWS-SMV, 2014 WL 12593994, at *4 (D.N.M. Oct. 21, 2014) (noting that 700 miles and 11 hours by car from defendant's place of business in Austin, Texas to the federal courthouse in Albuquerque are distances that are "inconvenient for traveling, but in this modern day of instant communication, they do not carry much prejudice toward [defendant], particularly given that Texas and New Mexico are neighboring states.").

The Court recognizes that technology and modern transportation have decreased the burdens of litigating a lawsuit in a distant forum. *See Peay,* 205 F.3d at 1212-13 ("[i]n this age of instant communication and modern transportation, the burdens of litigating in a distant forum have lessened."). At the same time, the Court finds that having to defend this lawsuit in New Mexico would present some not insignificant challenges to Defendant. Access to counsel will not be a significant problem for Defendant, and the Court agrees with Plaintiff that MGM has the option of utilizing the Brownstein Firm's office here in Albuquerque or in Las Vegas; however, the Court has some reservation concerning Plaintiff's certainty that there will be little or need for pre-trial court hearings. The need for hearings at which counsel would be required to make a personal appearance, as opposed to appearing by telephone, will depend on the particular issues being considered, the degree of cooperation between the parties, and the Court's preference for handling both discovery and substantive motions.

The Court finds Plaintiff to be overly optimistic about witness inconvenience, particularly when the only obvious New Mexico witness is Plaintiff Med Flight (Plaintiff does not identify other New Mexico witnesses). It is true that some witnesses may be located outside of Nevada. For example, the medical staff at the El Paso facility that played a key role in the decision to transport Mr. Hernandez to the Las Vegas facility may be included as witnesses. However, there

will be at least as many witnesses located in Las Vegas who will provide testimony and evidence regarding the denial of benefits under the MGM Plan—which is at the heart of this case. In effect, almost all of the anticipated witnesses and parties are located outside of New Mexico, and the distance between New Mexico and Nevada would certainly have an effect on many aspects of discovery, hearings and trial. The Court finds that the second and fourth *Peay* factors weigh considerably against the Court's exercise of jurisdiction over MGM.

      E.      <u>Nature of Regulated Activity</u>

Defendant is concerned that because the Plan is administered in Nevada and not New Mexico, adjudications made in New Mexico (pursuant to Tenth Circuit law) could affect MGM's operations under applicable regulated activities as an entity otherwise subject to the laws of Nevada and the Ninth Circuit. MGM contends that this could result in a situation where it finds itself bound by conflicting or inconsistent law. Plaintiff counters that New Mexico has a vested interest in assuring that contracts made within its borders are not breached.

Plaintiff's argument on this factor is misplaced. First, the contract which spawned this lawsuit and under which benefits were denied, is the MGM Plan. That plan was executed and is administered in Nevada, not New Mexico. The air transport contract is not at issue, and the assignment of benefits to Med Flight is not being challenged. Further, there is no particular interest New Mexico has in that contract; while Plaintiff may have "accepted" the assignment agreement in New Mexico, Mr. Hernandez was in an El Paso medical facility at the time that contract was entered into.

Plaintiff also misses the nature of the inquiry on this last *Peay* factor, which considers whether MGM's activities have a significant impact beyond Nevada's borders. MGM may have resorts located in other states, but the significance of the MGM Plan does not go far beyond

Nevada because the MGM Plan, its administrators and MGM's employment hub are all located in Las Vegas. *Cmp. Pryor,* 2014 WL 12593994, at *4 (finding that while Whole Foods Market, Inc. transacts business only in Texas, the impacts of its subsidiaries' business reach far beyond Texas to nearly 40 other states, Canada, and Great Britain); *Peay,* 205 F.3d at 1213 (finding that defendants' activities unquestionably have a significant impact beyond the borders where they are located because they operate and administer a multi-state insurance plan regulated by federal law).

For all these reasons, the Court finds that MGM has satisfied its burden of demonstrating that litigation of this case in New Mexico is unduly inconvenient. The Court comes to this conclusion finding that the first *Peay* factor weighs heavily against proceeding with the case in New Mexico. The absence of any actual connection between MGM and New Mexico (other than what results from nationwide advertising and that would satisfy only a "national contacts" test) would render litigation in this forum unduly burdensome, unfair and unreasonable to Defendant MGM.

## IV.    Balancing of Inconvenience to Defendant with Federal Interest

If a defendant successfully demonstrates that litigation in the plaintiff's chosen forum is unduly inconvenient, then "jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant." *Peay,* 205 F.3d at 1213. The question is now whether the burdens imposed on MGM by permitting the case to proceed in New Mexico outweigh any purported federal interest in litigating the dispute in New Mexico? The purported federal interest at stake here implicates the ERISA statute. However, the Tenth Circuit is clear that while a federal statute authorizes nationwide service and satisfies the statutory basis for jurisdiction over a defendant, there must

be "something more" in order to satisfy the due process requirement.  *Peay,* 205 F.3d at 1211. In this case, that "something more" is not present, and the benefit of litigating the claims underlying federal ERISA policies in New Mexico is outweighed by the constitutional unfairness to MGM in doing so.

## V.    Attorney's Fees and Costs

Defendant seeks an award of reasonable attorneys' fees and costs pursuant to ERISA Section 502(g)(1), which states that:

> (1) In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.
>
> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . .
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant.

29 U.S.C.A. § 1132 (g)(1) & (2). Plaintiff offers nothing in response to MGM's request, but the Court finds that such an award at this time would be premature.  MGM's request for attorneys fees and costs is based on ERISA Section 502(g)(1); however, the Court is ruling that there is no personal jurisdiction in this case over MGM which necessarily means that there has been no determination made on the merits.

## CONCLUSION

In sum, the Court finds and concludes that Defendant MGM has successfully demonstrated that litigation in this forum is unduly inconvenient and the Court further finds that

any federal interest in litigating the dispute here in New Mexico outweighs the burden imposed on MGM in having to defend the case here.[8]

**THEREFORE,**

**IT IS ORDERED** that Defendant MGM Resorts International's Renewed Motion to Dismiss First Amended ERISA Complaint Filed in Federal Court for Lack of Personal Jurisdiction **(Doc. 21)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that Defendant's request for attorney's fees and costs under 29 U.S.C.A. § 1132 (g)(1) & (2) is DENIED.

_____
UNITED STATES DISTRICT JUDGE

---

[8] The dismissal of Defendant MGM leaves one remaining Defendant, UMR which, as mentioned earlier, is registered and licensed to do business in the state of New Mexico. Doc. 1-1, ¶¶ 4, 17. The Court has deemed as admitted Defendant's facts regarding UMR in that it is retained only to perform ministerial functions, not discretionary functions, in connection with its claims processing duties regarding the Plan.